UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| THOMAS SCOTT NEALIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 1:08 CV 236 PS |
| | ) | |
| GRANT COUNTY, ET AL., | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

Plaintiff Thomas Scott Nealis was injured when another inmate at the Grant County jail attacked him. He brought this lawsuit under 42 U.S.C. § 1983 against Grant County, several of its jail officers, the jail commander, and the Grant County Sheriff. Nealis claims that the inmate who assaulted him posed a threat that the Defendants knew or should have known about but ignored. Nealis has also added a state law negligence claim against all of the defendants. Presently before the court is Defendants' Motion for Summary Judgment which, for the reasons stated below, is **GRANTED.**[1]

**Background**

Nealis was a detainee in the Grant County jail having been charged with a bond revocation and battery. He was initially placed in minimum security at the jail, but was eventually moved to medium security cell block 4C. On November 10, 2006, Nealis was attacked by Josh Timmons, another inmate in cell block 4C. Prior to the date of the assault, Timmons had been moved around the jail due to incidents between Timmons and other inmates.

---

[1] At the oral argument on the pending motion, Nealis agreed that the claims against Defendants Carmichael, Edris, Martin, and Austin lacked merit, and so I will grant summary judgment on all claims against these Defendants without discussion.

The decision to place Timmons in cell block 4C was made by Officer William Kirkpatrick, one of the corporals at the jail. According to Kirkpatrick, prior to being moved to cell block 4C, Timmons was being held in disciplinary isolation. But under jail rules and policies that Kirkpatrick learned during training at the Indiana Law Enforcement Academy, the maximum stay in disciplinary isolation was thirty days, and Timmons was nearing the end of that time frame. This necessitated his being moved again. (DE 21-18.) In deciding what to do with Timmons, Kirkpatrick spoke with the inmates Timmons had previous altercations with and concluded that Timmons had been provoked in those earlier incidents. Indeed, Officer Kirkpatrick's investigation revealed that one of the inmates that Timmons tussled with had a reputation for being a troublemaker and confrontational. (DE 21-18, at 3.) Kirkpatrick then spoke with Timmons himself and was satisfied that Timmons could stay out of trouble, so he placed him in cell block 4C. (*Id.*)

The day after being placed in cell block 4C, Timmons attacked Nealis. Prior to the attack, Nealis concedes that Timmons had never touched him before. (DE 21-2, at 32.) Here is how the altercation unfolded: another inmate named McGowan called Nealis a "nigger lover." (DE 21-2, at 15-16.) The two argued. Hearing a commotion, Corporal Anthony Marin looked through the window into the cell block, didn't see anything amiss, and was told by several inmates that it was only an argument. Timmons – claiming to be related to McGowan – joined in the scrap, ultimately hitting Nealis in the mouth. (*Id.*) Hearing more commotion, Marin walked through the cell block, told the inmates to settle down, and asked what was going on. Inmates again told him that there was only an argument, and so Marin left. (DE 21-23, at 2.)

According to Marin, he didn't see anything unusual when he walked through the cell block, and Nealis admits as much. Unfortunately, after Marin left, Nealis was hit again by Timmons and knocked out. After re-entering the cell block, Marin found Nealis, called Officer Melissa Shugart for help, and sent him to be treated for his injuries. (DE 21-2, at 10; DE 21-24.) Nealis sustained a broken ankle, fractured right orbit, and a broken nose as a result of the assault.

## Discussion

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment carries the initial burden of demonstrating an absence of evidence to support the position of the non-moving party. *Doe v. R.R. Donnelly & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). The non-moving party must then set forth specific facts showing that there is a genuine issue of material fact and that the moving party is not entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250 (1986). A genuine dispute about a material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 248. In making this determination, I must draw every reasonable inference from the record in the light most favorable to the non-moving party. *Haefling v. United Parcel Serv., Inc.*, 169 F.3d 494, 497 (7th Cir. 1999).

### I.     Section 1983 Individual Capacity Claims

Nealis' first claim is that the individual defendants failed to protect him from a known risk posed by Timmons. Because Nealis is a pretrial detainee, the test for individual liability

3

under section 1983 is deliberate indifference under the 14th Amendment due process clause. *Wilson v. Williams*, 83 F.3d 870, 875 (7th Cir. 1996). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded a known risk to inmate health or safety. *Collins v. Seeman*, 462 F.3d 757, 762 (7th Cir. 2006). "Even gross negligence is 'below the standard needed to impose constitutional liability.'" *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006). This is a "high hurdle" for the plaintiff to overcome; a plaintiff must provide some evidence that the defendant was aware of facts from which an inference can be drawn that the defendant showed total unconcern for the prisoner's welfare. *Collins*, 462 F.3d at 762; *Zentenmeyer v. Kendall County, Ill.*, 220 F.3d 805, 811 (7th Cir. 2000).

An abundance of Seventh Circuit cases have held that a plaintiff fails to meet the deliberate indifference standard where there is no evidence that the defendant was aware of an imminent threat specific to the plaintiff. This is because it's difficult to intentionally ignore an unknown threat. *Butera v. Cottey*, 285 F.3d 601, 606 (7th Cir. 2002) (concluding that a plaintiff's request to be moved from a cell block was insufficient evidence of a specific threat); *Grieveson v. Anderson*, 538 F.3d 763, 776-77 (7th Cir. 2008) (rejecting a deliberate indifference claim because the plaintiff didn't inform the jail officers of threats, and he didn't tie his attacker to the injuries); *Guzman v. Sheahan*, 495 F.3d 852, 858 (7th Cir. 2007) (concluding that because an officer didn't have "actual knowledge of a risk of injury" that a deliberate indifference claim was inappropriate).

Nealis argues that there is a question of fact as to whether Marin, Kirkpatrick, Lee, Shugart, and Moore acted with deliberate indifference. I disagree and will separately review the facts related to each individual officer.

4

### 1. Officer Anthony Marin

Officer Anthony Marin responded to the initial altercation between Nealis and Timmons by entering cell block 4C and telling the inmates to calm down. The Defendants submitted Marin's affidavit and Nealis's deposition testimony to support their argument that Marin didn't know that Timmons was a threat to Nealis. (DE 21-2; DE 21-23.) The facts before me indicate that Marin did not know that Timmons was a threat to Nealis, either prior to or during the attack.

Nealis responded to Marin's evidence by claiming that Marin knew about the threat prior to the day of the fight. He cites his deposition testimony where he stated that he asked Marin why Timmons got out of isolation and was returning to cell block 4C. (DE 21-2, at 26, 29.) But this question doesn't show that Marin knew that Timmons was a threat to Nealis. And Marin's affidavit states that Nealis had never told him that Timmons was a threat to him. (DE 21-23.) Simply posing a question to a jail officer asking why an inmate was being moved into a certain cell block is a long way away from showing that the inmate poses a specific risk to the victim. Because Nealis didn't communicate a fear that Timmons might attack him, Marin wasn't deliberately indifferent to Nealis' safety.

Nealis also contends that Marin should have known that Timmons hit Nealis when Marin first walked through the cell block. But Marin's description of the incident doesn't rise to deliberate indifference, and Nealis doesn't allege any facts that contradict Marin's description. Marin states that when he heard commotion in cell block 4C, he looked in the window, saw nothing unusual, and the inmates told him that it was just an argument. (DE 21-23, at 2.) Marin states that he heard yelling after that, so he walked through the cell block and didn't see anything unusual. He found no blood or evidence of a fight. (*Id.* at 3.) Then, after hearing more

commotion, Marin re-entered the cell block and found that Nealis had been injured. Marin then immediately and appropriately responded by getting Nealis prompt medical attention.

Nealis doesn't contradict Marin's version of the incident. Rather, he argues that Marin should have done more than just walk through the cell block because usually when there's an altercation the officers walk through and make everyone take their shirts off and show their hands to see if there's been a fight. (DE 21-2, at 10.) He contends that the failure to do this amounts to deliberate indifference. But this is more akin to negligence, which isn't enough to establish liability. So the undisputed facts are that Marin responded to the initial fight, didn't see what actually happened, and then found Nealis after the second incident. These facts don't show that Marin knew that Timmons had hit or threatened Nealis. Because there are no facts indicating that Marin knew that Timmons posed a threat to Nealis, the deliberate indifference claim against Officer Marin fails. *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (requiring a specific threat to the plaintiff for a deliberate indifference claim).

### 2. Officer William Kirkpatrick

Officer William Kirkpatrick was responsible for moving Timmons into cell block 4C from a single cell isolation unit. Nealis contends that because Kirkpatrick knew about Timmons' prior fights in the jail, moving him into cell block 4C constitutes deliberate indifference. But simply knowing that Timmons had been in two prior fights does not equate to knowledge that he posed a risk to Nealis. Indeed, Kirkpatrick's affidavit states that he didn't know about any threats to Nealis before the incident.

If anything, the evidence suggests precisely the type of careful review that one might reasonably expect from a jail official making the difficult decision about where to place a

7

problem inmate. Kirkpatrick's affidavit describes in detail his decision to place Timmons in cell block 4C. First, 30 days is the maximum amount of time for inmates to be held in disciplinary isolation, and Timmons had been held in isolation for almost thirty days. (DE 21-18, at 2.) In deciding to move Timmons, Kirkpatrick first reviewed Timmons' file. Kirkpatrick then talked to the two individuals Timmons had been in fights with. James Ricks was one of those inmates, and from his talk with Ricks, Kirkpatrick concluded that Timmons had at least been partially provoked during that incident. Kirkpatrick further learned that the other inmate Timmons had gotten into a fight with, Jerry Aidt, had an argumentative reputation and had verbally provoked Timmons before. (DE 21-18, at 3.) He also spoke directly with Timmons about whether he'd fight again, and Timmons told him he could control himself. Kirkpatrick's description of his decision-making process, which Nealis doesn't rebut, is a clear exercise of care, which is inconsistent with a claim for deliberate indifference. *See Collins*, 462 F.3d at 762 (officers must show total unconcern in a claim for deliberate indifference). The deliberate indifference claim against Kirkpatrick therefore fails.

### 3. Officer Cathy Lee

Cathy Lee is the Grant County Jail Commander, and Nealis brought a deliberate indifference claim against her individually because he allegedly filed a grievance with her concerning Timmons. (DE 23, at 4.) It is true that evidence of a grievance stating that Timmons was threatening him would be evidence that Lee was on notice of a specific threat. *Santiago v. Walls, et al.*, 599 F.3d 749, 753 (7th Cir. 2010) (finding that a deliberate indifference claim survived a motion to dismiss after a prisoner filed an emergency grievance with the warden).

But the evidence doesn't bear this out. Lee's affidavit states that she did not have any knowledge, prior to the altercation with Nealis, that Timmons posed a threat to anyone. (Lee Affidavit, DE 21-4.) At no time did she receive any communication or grievance from any inmate regarding Timmons and his history of resorting to violence. (DE 21-4, at 4.) Nealis offers nothing in response to Lee's sworn declaration. Indeed, in his deposition, he says quite clearly that he never submitted a grievance about Timmons. The best he could do is say that he "thinks" he signed something to that effect and that he "assumed" that Cathy Lee got it. (DE 21-2, at 30.) But when pressed he finally conceded that he didn't recall signing anything of the sort. (*Id*.)

The bottom line is that Nealis never saw a grievance, doesn't know if the grievance exists, and couldn't say whether Lee received the grievance. In the face of direct evidence from Lee to the contrary, there's no issue of fact as to whether Lee was on notice that Timmons was a threat to Nealis. Summary judgment is granted for the deliberate indifference claim against Lee as well.

### 4. Officer Melissa Shugart

Defendant Officer Melissa Shugart was present the day of the incident in cell block 4C. However, her affidavit states that she knew nothing about the fight until afterwards. (DE 21-22, at 2.) She also stated that she didn't know anything about any threats against Nealis. The only reason Nealis included her as a defendant was because he says he saw her looking through the window into the cell block on the day Timmons assaulted him. But he doesn't allege that she saw him, and Shugart says that she did not. Because there are no facts indicating that she knew

9

that Timmons threatened Nealis and did nothing about it, summary judgment is appropriate for the deliberate indifference claim against Officer Shugart.

### 5. Officer Bradley Moore

Officer Moore ordered Timmons to be moved to cell block 2G after one of Timmons' prior incidents, and so Nealis included a deliberate indifference claim against him. However, Moore wasn't involved with moving Timmons back into cell block 4C where the altercation with Nealis occurred. In fact, he didn't even know that Timmons had been moved back to 4C from 2G until this lawsuit was filed. (DE 21-11.) And he stated he had no idea that Timmons was a threat to Nealis. Nealis does nothing to rebut this and show that Moore had any knowledge about how Timmons was a threat to Nealis, or any other inmate for that matter. Thus, summary judgment is appropriate in favor of Moore as well.

### 6. Sheriff Oatess Archey

Nealis also brought an individual claim against Sheriff Archey for deliberate indifference. Archey's affidavit states that he did not have any knowledge of Nealis's situation with Timmons until after the incident, and that he never had knowledge of a situation where an employee of the Grant County Sheriff was deliberately indifferent regarding violence in the jail. (DE 21-3.) Nealis hasn't responded with any facts in opposition, and so summary judgment is appropriate for the deliberate indifference claim against Sheriff Archey.

## II. Section 1983 Official Capacity Claim Against Sheriff Archey and Grant County

Nealis also brings an official capacity claims against Sheriff Archey and Grant County. A governmental entity can only be held liable where it causes constitutional deprivation when executing official policy or practice. *Calhoun v. Ramsey*, 408 F.3d 375, 379 (7th Cir. 2005). A

failure to properly train law enforcement officers can be an official policy or practice and is one way to establish municipal liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Indeed, that is Nealis' theory of municipal liability in this case. But there cannot be governmental liability for a failure to train if there is no underlying constitutional deprivation in the first place. *Windle v. City of Marion*, 321 F.3d 658, 663 (7th Cir. 2003). Because I have already concluded that there hasn't been a constitutional deprivation by any of the individual defendants as a matter of law, I need not evaluate whether there was an unconstitutional policy or practice in play at the Grant County jail. Summary judgment is appropriate for the official capacity claims against Archey and Grant County.

### III. Equal Protection Claim

Nealis also claims that he was deprived of equal protection under the Fourteenth Amendment. To prove a violation of the equal protection clause, the plaintiff must prove discriminatory effect and purpose. *Chavez v. Illinois State Police*, 251 F.3d 612, 635-36 (7th Cir. 2001). Plaintiff must show that Nealis was a member of a protected class, that he was similarly situated to members of an unprotected class, and that he was treated differently from members of the unprotected class. *Id.* In the prison context, the inquiry is whether unequal treatment "bears a rational relation to a legitimate penal interest." *May v. Sheahan*, 226 F.3d 876, 882 (7th Cir. 2000).

Defendants allege that Nealis isn't a member of a protected class, and that even if he was, they didn't know he was a member of a protected class. Nealis hasn't provided any facts to show that Nealis is a member of a protected class or that he was treated differently in any way. Rather, Nealis's position is that he and other members of cell block 4C were treated worse than

other inmates because Defendants placed Timmons in cell block 4C after two other fights. (DE 23, at 14.) But this argument doesn't indicate that inmates in 4C were treated worse than other inmates in the jail because it doesn't show that Timmons was more of a threat than any other inmate. And even if it did, William Kirkpatrick's affidavit provides a rational reason why Timmons' was placed in cell block 4C. He explained that Timmons was scheduled to be moved from isolation, and that he explored whether Timmons would pose a threat to other inmates and concluded that he would not. (DE 21-8, at 3-4.) So even assuming that Nealis and other cell block 4C inmates were treated differently, Defendants established a legitimate penal interest in the decision to place Timmons there. Thus, summary judgment on the equal protection claims is granted in favor of all the Defendants.

### IV.     State Law Claim

Nealis' final claim is that the defendants were negligent under Indiana law for failing to exercise ordinary and reasonable care in segregating inmates generally, and Timmons in particular. District courts should relinquish jurisdiction over state law claims remaining after dismissal of federal claims unless "(1) the state law claims may not be re-filed because a statute of limitations has expired, (2) substantial judicial resources have been expended on the state claims, or (3) it is clearly apparent how the state claims are to be decided." *Dargis v. Sheahan*, 526 F.3d 981, 990 (7th Cir. 2008). The state claims are not time-barred because this case was filed in this court within the two-year statute of limitations, and Nealis may properly re-file this action in state court under the time frame described in I.C. 34-11-8-1. Some judicial resources have been expended because discovery has been completed and I held an oral argument on this motion, but the reasoning with respect to the federal claims didn't reach the issues related to the

state negligence claim. And because the negligence standard differs from the deliberate indifference standard, it's not clearly apparent how the state claims will be decided. As none of the reasons to retain jurisdiction apply, I will exercise my discretion and relinquish jurisdiction over the state claims.

* * * *

For the foregoing reasons, Defendants' Motion for Summary Judgment (DE 19) is **GRANTED** on the federal claims. The state claims are dismissed without prejudice.

**SO ORDERED**.

ENTERED: September 22, 2010

s/ Philip P. Simon<br>PHILIP P. SIMON, CHIEF JUDGE<br>UNITED STATES DISTRICT COURT